UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

WILMA BRADLEY,

        Plaintiff,

        v.

MIGUEL CARDONA,

        Defendant.

Case No. 22-cv-3316 (CRC)

**MEMORANDUM OPINION**

Plaintiff Wilma Bradley worked at the Department of Education for more than two decades. She alleges that, dating back to 2005, she was subjected to discriminatory and retaliatory conduct based on her race, gender, and age, culminating in her termination in 2019. Bradley filed suit against Miguel Cardona, in his official capacity as Secretary of the Department of Education ("the Department"), alleging violations of Title VII, 42 U.S.C. § 2000(e) *et seq.*, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.* The Department filed a motion to dismiss or, in the alternative, to transfer the case to the Northern District of Georgia, where Bradley worked. Bradley opposes the motion and has also moved for leave to amend her complaint. Having considered these dueling motions, the Court will grant the Department's motion to transfer the case to the Northern District of Georgia.

I.   Background

The Court draws the following factual background from the allegations in Bradley's First Amended Complaint, which it must accept as true for purposes of this motion. See Sissel v. U.S.

Dep't of Health & Hum. Servs., 760 F.3d 1, 4 (D.C. Cir. 2014).  The Department no doubt contests many of these facts.

Bradley is an African-American woman who was employed at the Department of Education's office in Atlanta, Georgia from 1997 until her termination in 2019.  Pl.'s Mot. to Am. Compl., ECF No. 15, Ex. 1 ("Am. Compl.") ¶¶ 1, 4, 111.  She claims to have faced disparate treatment and retaliation dating back to 2005, when she filed the first in a series of internal Equal Employment Opportunity ("EEO") complaints.  Id. ¶ 12.[1]  Between then and 2017, she alleges her work was subject to heightened scrutiny and unfair review, she was disproportionately assigned complex cases and denied promotional opportunities, and she faced backlash for taking on leadership positions in the federal employees union.  Id. ¶¶ 14, 16–17, 23, 26–29.  Things took a turn for the worse in 2017.  That year, among other disciplinary measures, Bradley was denied annual leave, given an official written reprimand, and charged with an unsanctioned absence.  Id. ¶¶ 30, 32, 36.  She was later suspended on several occasions for failing to follow directives and comply with new agency computer procedures.  Id. ¶¶ 63, 71–72.  She was ultimately terminated in 2019.  Id. ¶¶ 4, 111.

Bradley filed her federal lawsuit on October 28, 2022, alleging violations of Title VII, and the ADEA.  Her complaint alleged that the Department discriminated against her based on her race, gender, and age, and unlawfully retaliated against her for engaging in protected EEO activity.  In April 2022, the Department filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim and Federal Rule of Civil Procedure 12(b)(3)

---

[1]  At another point in the amended complaint, Bradley suggests she filed her first EEO complaint in 2004.  Am. Compl. ¶ 28.

for improper venue.  The Department also moved, in the alternative, to transfer the case pursuant to 28 U.S.C. § 1406(a).

Bradley opposed the government's motion.  She also filed a motion for leave to amend her initial complaint.  The proposed amendment beefs up her factual allegations in response to the government's arguments for dismissal under Rule 12(b)(6) and brings new hostile work environment claims.  Id. ¶¶ 116–31, 149–64.  It also adds several allegations that go to the government's contention that venue is improper in this district, including that all final decisions related to the employment actions at issue were made by a higher-level supervisor in Washington, D.C.  Id. ¶¶ 11, 48–49.  Given the proposed amendment, the Court directed the parties to address whether transfer of venue would be appropriate under 28 U.S.C. § 1404(a), which permits transfer "for the convenience of the parties and witnesses" and "in the interest of justice" even if venue is proper in the plaintiff's chosen forum.  28 U.S.C. § 1404(a).  The parties have now briefed that issue.  Because venue in D.C. is disputed, the Court will confine its analysis to § 1404(a).  See Claros v. Cowan, No. 21-cv-609 (JEB), 2021 WL 1820209, at *1 (D.D.C. May 6, 2021) ("Although Plaintiffs and Defendants disagree about whether venue is proper in this District, the Court need not wade into that controversy today.  Instead, it will proceed with the § 1404(a) transfer framework. . . .").[2]  The government argues that application

---

[2]  Another court in this district disagreed with the approach in Claros, noting that "[t]ransfer under § 1404(a) is only appropriate if venue is also proper in the district in which the suit is originally brought."  Melnattur v. USCIS, No. 20-cv-3013 (JDB) 2021 WL 3722732, at *3 n.4. (D.D.C. Aug. 23, 2021).  "[O]therwise, 28 U.S.C. 1406(a) is the appropriate mechanism for transfer."  Id.  This Court will follow Claros.  It finds no restriction in the text of § 1404(a) or 1406(a) on applying § 1404(a)'s framework when venue is disputed in the original district.  Nor does it read Atlantic Marine Construction Co. v. U.S. District Court for the Western District of Texas, 571 U.S. 49 (2013), which the court in Melnattur cites, as prohibiting transfer under § 1404(a) when § 1406(a) might also require transfer.  See also Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 584–85 (1999) ("While Steel Co. reasoned that subject-matter jurisdiction necessarily precedes a ruling on the merits, the same principle does not dictate a sequencing of

3

of the statute should result in a transfer to the Northern District of Georgia; Bradley urges the Court to keep the case here.

## II. Legal Standard

A court may transfer a civil action to any other district "[f]or the convenience of parties and witnesses [and] in the interest of justice," as long as the transferee district is one where the case "might have been brought." 28 U.S.C. § 1404(a). "The moving party bears the burden to establish both (1) that the plaintiff *could* have brought the action in the proposed transferee court and (2) that the action *should* have been brought there." Ike v. USCIS, No. 20-cv-1744 (CRC), 2020 WL 7360214, at *2 (D.D.C. Dec. 15, 2020). The Court may consider materials outside of the pleadings in deciding a transfer motion. Wolfram Alpha LLC v. Cuccinelli, 490 F. Supp. 3d 324, 330 (D.D.C. 2020).

## III. Analysis

### A. This Case Could Have Been Brought in Georgia.

Since Bradley alleged causes of action under both Title VII and the ADEA, which apply different venue standards, the Court will address each statute in turn.

Bradley could have brought her Title VII claims in the Northern District of Georgia. Under Title VII, venue is proper in any of the following: (1) "any judicial district in the State in which the unlawful employment practice is alleged to have been committed," (2) "the judicial district in which the [relevant] employment records . . . are maintained and administered," or (3) "the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice." 42 U.S.C. § 2000e-5(f)(3); see also Valerino v. Holder, 20 F.

---

jurisdictional issues. . . . It is hardly novel for a federal court to choose among threshold grounds for denying audience to a case on the merits.").

Supp. 3d 203, 205 (D.D.C. 2013) ("Title VII includes [] specific venue provision[s], which . . . override[] any other venue provision governing actions in federal court."). Because venue is appropriate in the Northern District of Georgia under the first provision, the Court will direct its attention there. For this provision, courts consider "the place where the decisions and actions concerning the employment practices occurred," Jones v. Hagel, 956 F. Supp. 2d 284, 289 (D.D.C. 2013) (cleaned up), and "apply a commonsense appraisal of events having operative significance," Calobrisi v. Booz Allen Hamilton, Inc., 58 F. Supp. 3d 109, 112 (D.D.C. 2014) (cleaned up).

The lion's share of the alleged discriminatory and retaliatory conduct took place in Atlanta. As Bradley acknowledges, she worked in the Department's Atlanta office for the entirety of her career. Am. Compl. ¶ 4. Courts in this district have routinely found that Title VII's first venue provision authorizes suit in the district where the plaintiff worked. See, e.g., Edley v. Saul, No. 18-cv-1553 (RBW), 2019 WL 3238635, at *3 (D.D.C. July 18, 2019); Johnson v. Deloitte Servs., LLP, 939 F. Supp. 2d 1, 4 (D.D.C. 2013); Al-Beshrawi v. United States, No. 04-cv-0743 (RCL), 2005 WL 3274104, at *2 (D.D.C. Aug. 3, 2005). The parties disagree about where supervisors with "final decision[making]" power worked. See Am. Compl. ¶ 11 ("[A]ll final decisions related to [Bradley's] employment, duties, promotions, and discipline were made by Kami Russo . . . [a supervisor] who was resident in the D.C. [] headquarters."); Def.'s Reply, ECF No. 22, Ex. 2, Second Declaration of Lauren Wilson ("Second Wilson Decl.") ¶¶ 8–9 ("All Responsible Management Officials are located in Atlanta, Georgia . . . . Kami Russo was not responsible for any of the alleged actions at issue in this case or in the EEO Complaint."). But Bradley acknowledges that "[a]t all times relevant to the First Amended Complaint," she "had supervisory managers in Atlanta." Am. Compl. ¶ 11. And there is no

question her Atlanta-based supervisors were involved in the alleged discrimination and retaliation. Indeed, she claims they "constantly monitor[ed] her movements," falsely "noted her as absent," and "regularly undermine[d] her credibility in front of subordinates and new employees."[3] Id. ¶¶ 47, 75; see also Mot. Dismiss, ECF No. 11, Ex. 1 at 6 (listing Atlanta work addresses for the two relevant supervisors). Based on this evidence, the "commonsense" conclusion is that venue is proper in the Northern District of Georgia. Calobrisi, 58 F. Supp. 3d at 112 (cleaned up).

Bradley also could have filed her ADEA claims in the Northern District of Georgia. The general federal venue statute, 28 U.S.C. § 1391, governs ADEA claims. See Bennett v. Ross, No. 18-cv-2098 (TSC), 2019 WL 13098009, at *2 (D.D.C. July 19, 2019). Under that statute, venue is proper in a jurisdiction where (1) "a defendant in the action resides," (2) "a substantial part of the events or omissions giving rise to the claim occurred," or (3) "the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e)(1). The Northern District of Georgia meets the second and third requirements. The complaint alleges that Atlanta-based supervisors made disparaging comments about Bradley's age, including suggesting that she retire and that she was struggling with the Department's new computer system because of her age. Am. Compl. ¶¶ 55–57. And, Bradley resides in Clayton County, Georgia, which is in the Northern District of Georgia. Compl., ECF No. 1, at 1; Pl.'s Opp'n, ECF No. 16, Ex. 1 at 45; see

---

[3] The parties dispute whether Bradley failed to timely exhaust the allegations in her complaint and failed to timely file her federal suit. See, e.g., Mot. Dismiss at 8–11; Pl.'s Opp'n at 5–9. As described below, the Court does not decide these issues since the relevant law may differ in the transferee court. In considering the allegations for its venue analysis, however, the Court is mindful to avoid relying on factual allegations that are clearly time-barred or not exhausted.

also United States District Court Northern District of Georgia, "Court Info," https://www.gand.uscourts.gov/court-info (last visited December 7, 2023).

Because the Northern District of Georgia satisfies both Title VII's and the ADEA's venue requirements, Bradley could have filed her suit there.

B. This Case Should Have Been Brought in Georgia

Moving on to the second half of the analysis, the Court finds the case should have been brought in the Northern District of Georgia. Under this inquiry, courts "weigh in the balance a number of case-specific factors" to assess whether transfer is in the public and private interest of the parties. Gyau v. Sessions, No. 18-cv-407, 2018 WL 4964502, at *1 (D.D.C. Oct. 15, 2018) (quoting Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988)). "The private interests include the plaintiff's preferred forum, the defendant's preferred forum, where the claim arose, and the convenience to the parties, to the witnesses, and to the evidence." Id. "The public interests include the transferee court's familiarity with the governing laws, each court's relative congestion, and the local interest in resolving the controversy." Id.

The relevant private interest factors—the plaintiff's preferred forum, the defendant's preferred forum, and the location where the claim arose—favor transfer to the Northern District of Georgia. To begin, Bradley's choice of forum is afforded minimal deference in this case. Although courts ordinarily defer to the plaintiff's chosen forum, it "is conferred considerably less deference when it is not the plaintiff's home forum, has few factual ties to the case at hand, and defendants seek to transfer to plaintiff's home forum." Bourdon v. U.S. Dep't of Homeland Sec., 235 F. Supp. 3d 298, 305 (D.D.C. 2017). Here, Washington, D.C. is not Bradley's home forum, but the Northern District of Georgia—the Department's preferred forum—is. And, as described above, most of the events underlying her claims took place in Atlanta.

7

The convenience to the witnesses and the location of evidence do not merit much weight in this case.  Though Bradley, her former co-workers, and two of her supervisors reside in the Northern District of Georgia, the parties dispute where the final decisionmakers are located.  See Pl.'s Sur-reply, ECF No. 24, at 4; Second Wilson Decl. ¶¶ 8–9.  More importantly, however, neither side has argued that any witnesses will be unavailable for trial should it be held in one forum as opposed to the other.  See Bourdon, 235 F. Supp. 3d at 305 (courts consider "the convenience of the witnesses of the plaintiff and defendant, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora" (cleaned up)).  As to the location of relevant evidence, since Bradley is a former federal employee, her personnel file is in St. Louis, Missouri—not D.C. or the Northern District of Georgia.  See National Archives, "National Personnel Records Center," https://www.archives.gov/personnel-records-center (last visited December 7, 2023).  On the whole, therefore, the private interests counsel in favor of transfer to the Northern District of Georgia.

The relevant public interest factors—the forums' interests in adjudicating the case and relative congestion—also support transfer.[4]  In general, "[c]ontroversies should be resolved in the locale where they arise."  Trout Unlimited v. U.S. Dep't of Agric., 944 F. Supp. 13, 19 (D.D.C. 1996).  Most of the actions that gave rise to Bradley's claims took place in Georgia.  And Bradley, the allegedly aggrieved party, as well as her co-workers and two of her supervisors, reside there.  See also Cadilla v. MFX Sols., Inc., No. 20-cv-5966 (AKH), 2021 WL 1268339, at *3 (S.D.N.Y. Apr. 6, 2021) (courts have "an interest in protecting [their] residents

---

[4] The final factor—courts' relative familiarity with the governing law—does not weigh in favor of either venue.  Federal law governs in this case, and federal courts are presumed equally familiar with federal law.  See Al-Ahmed v. Chertoff, 564 F. Supp. 2d 16, 20 (D.D.C. 2008).

from discrimination"). As for congestion, the District of Columbia and the Northern District of Georgia had roughly the same number of pending cases as of June 2023. See Def.'s Reply at 10. While the parties disagree about how to calculate the relative caseloads of judges, see id. at 11; Pl.'s Sur-reply at 4, the Court is mindful of its obligation to consider "*future* congestion," Melnattur, 2021 WL 3722732, at *8. If federal employees alleging discrimination and a hostile work environment could "manufacture venue in the District of Columbia," Cameron v. Thornburgh, 983 F.2d 253, 256 (D.C. Cir. 1993), by claiming a distant supervisor resides here, "this District could become deluged" with employment discrimination cases, Wolfram Alpha LLC, 490 F. Supp. 3d at 335. "[T]his concern, standing alone, is no reason to transfer a case," Melnattur, 2021 WL 3722732, at *8, but leans in favor of transfer.

Since three private interests and two public interests favor transfer, and the remaining ones are in equipoise, balancing the prudential factors counsels transfer.

Having found transfer appropriate under § 1404(a), the Court must decide what to do with the Department's Rule 12(b)(6) motion and Bradley's motion for leave to amend, which the Department opposes as futile. The briefing on both motions is focused primarily on whether Bradley exhausted administrative remedies for her various claims. Because the case will be transferred to a different circuit with potentially different governing law on exhaustion requirements, the Court will deny both motions without prejudice to refiling. This approach will also give the receiving court the opportunity to set its own briefing schedules on any renewed motions.[5]

---

[5] Should the parties refile their respective motions in the transferee court, the Court encourages them to consider whether Bradley's June 23, 2018 informal complaint satisfied the exhaustion requirements of 29 C.F.R. §§ 1614.105–1614.106 in light of the Supreme Court's reasoning in Federal Express Corp. v. Holowecki, 552 U.S. 389 (2008).

9

## IV. Conclusion

Transfer under § 1404(a) is warranted because Bradley could and should have sued in the Northern District of Georgia. The Court therefore grants the government's motion to transfer and denies without prejudice its motion to dismiss and Bradley's motion for leave to amend. A separate order will issue.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date:  December 7, 2023